1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9   HENRY JOSEPH CASTILLO,                    CV F   04-6032 OWW DLB HC

10              Petitioner,                   FINDINGS AND RECOMMENDATIONS
                                              REGARDING PETITION FOR WRIT OF
11      v.                                    HABEAS CORPUS

12                                            [Doc. 1]
    WILLIAM DUNCAN, Acting Warden,
13
                Respondent.
14   _____/

15

16       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

                              DISCUSSION
18

19       On August 7, 2002, following a jury trial in the Kings County Superior Court, Petitioner

20   was convicted of being a felon in possession of a firearm in violation of California Penal Code[1]

21   section 12021(a)(1), and of attempted criminal threats.  (CT 94-95.)  The jury further found true

     the allegation that Petitioner personally used a firearm in the commission of the criminal threats,
22
     and that he previously suffered two prior juvenile convictions and one prior conviction that
23
     resulted in imprisonment.  (CT 95-98.)  Petitioner was sentenced to thirty six years to life in state
24
     prison.
25

26       Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth

27   Appellate District.  On March 23, 2003, the Court of Appeal affirmed the conviction and

28
     _____
         [1] All future statutory references are to the Penal Code unless otherwise indicated.

                                              1

1  sentence.  (Respondent's Exhibit C.)

2      Petitioner filed a petition for review with the California Supreme Court.  The petition was

3  denied on June 9, 2004.  (Respondent's Exhibit E.)

4      On August 19, 2002, Petitioner filed a petition for writ of habeas corpus with the Kings

5  County Superior Court.  (Respondent's Exhibit F.)  The petition was denied on August 26, 2002.

6  (Respondent's Exhibit G.)

7      On September 17, 2002, Petitioner filed a second petition for writ of habeas corpus with

8  the Kings County Superior Court.  (Respondent's Exhibit H.)  That petition was denied on

9  October 8, 2002.  (Respondent's Exhibit I.)

10      On August 8, 2003, Petitioner filed a third petition for writ of habeas corpus with the

11  Kings County Superior Court.  (Respondent's Exhibit J.)  The petition was denied on March 23,

12  2004.  (Respondent's Exhibit K.)

13      On April 5, 2004, Petitioner filed a petition for writ of habeas corpus with the Fifth

14  District Court of Appeal.  (Respondent's Exhibit L.)  The petition was denied on April 15, 2004.

15  (Respondent's Exhibit M.)

16      Petitioner filed the instant petition for writ of habeas corpus on July 29, 2004.

17  Respondent filed an answer on November 24, 2004, and Petitioner filed a traverse on January 6,

18  2005.[2]

19                    STATEMENT OF FACTS

20      Sheila Torres testified that on February 22, 2002, she was at the Cottage Bar and Card

21  Room in Hanford, California.  (RT 31-32.)  Mickey Worley owns the bar and his brother,

22  Kenneth Worley, manages it.  (RT 81.)  While in the bar, Petitioner struck up a conversation with

23  her.  (RT 32-33.)  Petitioner claimed he was Mickey's son and that Mickey had died.  (RT 33-

24  34.)  Petitioner claimed that he was therefore the owner of the bar.  (Id.)  Petitioner told Ms.

25  Torres that he was going to kill Mr. Worley by shooting him.  (RT 34-35.)

26

27      [2] Petitioner's traverse consists of a single page document in which Petitioner merely denies the allegations
   and arguments made by Respondent and submits his arguments and points of authorities presented in his petition for
28  writ of habeas corpus.

2

1   Ms. Torres communicated Petitioner's threats to Mr. Worley.  (RT 35.)  Mr. Worley told

2   Petitioner that Mickey was not dead and that he had just spoken with him the previous day.  (RT

3   83.)  Petitioner thought Mr. Worley was lying.  (RT 116.)

4   Petitioner, Ms. Torres, and a few others walked outside.  (RT 35-36.)  Petitioner again

5   stated that he was going to kill Mr. Worley.  (RT 36.)  Before walking outside, Mr. Worley went

6   back inside the bar without hearing Petitioner's threat.  (RT 36-37.)  While outside the bar,

7   Petitioner grabbed, Allen Vierra, by the throat and threw him up against a wall threatening to kill

8   him.  (RT 37.)  Ms. Torres encouraged Petitioner to leave the car because the police had been

9   called.  (RT 38.)  Petitioner turned to walk away but, before leaving, turned to face Ms. Torres,

10  with his hand on his waist displaying a handgun.  (RT 38-40.)  Petitioner again threatened to kill

11  Mr. Worley, but left when Ms. Torres reminded him the police were on the way.  (RT 40.)

12  Torres told Mr. Worley that Petitioner had a gun.  (RT 41.)

13  Petitioner was arrested as he was walking away from the bar and a loaded handgun was

14  recovered from his coat.  (RT 92-94, 96, 99, 101, 104.)

15  Petitioner testified in his own defense and denied ever threatening Mr. Worley.  (RT 113,

16  116.)  Petitioner claimed that when he left the bar he grabbed the wrong coat.  (RT 116-117.)  He

17  denied any knowledge of the handgun found in the coat he was wearing, claiming that it must

18  have belonged to the owner of the coat.  (Id.)

19                                          DISCUSSION

20  A.   Jurisdiction

21  Relief by way of a petition for writ of habeas corpus extends to a person in custody

22  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

23  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

24  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

25  violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

26  out of the Kings County Superior Court, which is located within the jurisdiction of this Court.  28

27  U.S.C. § 2254(a); 2241(d).

28  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.

1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

(1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with

respect to a state prisoner's claim that was adjudicated on the merits in state court.  Williams v.

Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States;" or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State Court

proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are

constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

(1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

1   Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

2   factual determinations must be presumed correct, and the federal court must accept all factual

3   findings made by the state court unless the petitioner can rebut "the presumption of correctness

4   by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

5   S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

6   110 F.3d 1380, 1388 (9th Cir. 1997).

7   C.   Procedural Default of Claims Three and Four

8          In Claim Three, Petitioner contends that the trial court erred in responding to the jury's

9   question during deliberations regarding the difference between a criminal threat and an attempted

10  criminal threat.  In Claim Four, Petitioner contends that the trial court improperly instructed the

11  jury on the elements of murder and assault with a firearm in regards to his criminal threats

12  charge.

13         Respondent contends that these claims are procedurally defaulted as the Court of Appeal

14  denied the claims on the merits and with a citation to People v. Bolin, 18 Cal.4th 297, 326 (1998)

15  (failure to object to the trial court's instruction of the jury waives the issue for appellate review.)

16  (Respondent's Exhibit C, at 12.)  The Court agrees.

17         A federal court will not review a petitioner's claims if the state court has denied relief of

18  those claims pursuant to a state law that is independent of federal law and adequate to support the

19  judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722,

20  729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  In such a case,

21  Petitioner is deemed to have procedurally defaulted his claims.  This doctrine of procedural

22  default is based on concerns of comity and federalism.  Coleman, 501 U.S. at 730-32.

23         A claim is procedurally defaulted for federal habeas purposes if the state court relies on

24  state procedural grounds to deny relief.   Coleman v. Thompson, 501 U.S. 722, 729 (1991).

25  However, the state court's decision must "clearly and expressly state [ ] that its judgment rests on

26  a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).   If a state court reaches the

27  merits of a federal claim in the alternative, federal review is barred "as long as the state court

28  explicitly invokes a state procedural bar rule as a separate basis for decision."  Harris, 489 U.S. at

5

264 n. 10; see also Loveland v. Hatcher, 231 F.3d 640, 643-44 (9th Cir. 2000).  If it is unclear whether the state court invoked a procedural bar or denied the merits of the claim, a federal court may review the merits of the claim.  Loveland, 231 F.3d at 643-44; Siripongs v. Calderon, 35 F.3d 1308, 1317 (9th Cir.1994).   "A state court's application of a procedural rule is not undermined where . . . the state court simultaneously rejects the merits of the claim."  Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed."  O'Dell v. Thompson, 502 U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857 (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37 (1984); Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), cert. denied, 117 S.Ct. 1569.  A federal court may still consider a procedurally defaulted claim if the petitioner can demonstrate (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  Harris, supra, 489 U.S. 260, 262, 109 S.Ct. 1038 (1989).

In Bennett, the Ninth Circuit found that California's rule of timeliness is "independent" of federal law for purposes of applying procedural default. Bennett, 322 F.3d at 581. Thus, it is necessary to determine whether the procedural rule is "adequate." To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir.1999) ( "A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court."), quoting Ford v. Georgia, 498 U.S. 411, 424 (1991). However, the issue of adequacy cannot be concluded without an adequate record.

The Ninth Circuit has stated that the ultimate burden of proving the adequacy of the California state bar is upon the State. Bennett, 322 F.3d at 585-86.  However, the burden shifts to the petitioner to place that defense in issue once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense. Id. Petitioner "may

satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's." Id.

The Ninth Circuit has held that California's contemporaneous objection rule, which requires objection at the time of trial to preserve an issue for appeal, is an adequate procedural bar. The contemporaneous objection rule is applied independent of federal law. See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999)(recognizing and applying California's contemporaneous objection rule in affirming denial of a federal petition on the ground of procedural default); Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999)("We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome); Bonin v. Calderon, 59 F.3d 815, 842-43 (9th Cir. 1995)(sustaining the state court's finding of procedural default where defendant failed to make any objection at trial); Nevius v. Sumner, 852 F.2d 463, 470 (9th Cir. 1988) ("Errors at trial that are not preserved by contemporaneous objection and subsequent appeal to the state supreme court are barred in a collateral habeas corpus review, unless the petitioner can show cause and prejudice"); Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981), reversed on other grounds in Ross v. Oklahoma, 487 U.S. 81 (1988). California courts have consistently applied the contemporaneous objection rule. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002) ("We held more than twenty years ago that the rule is consistently applied when a party has failed to make any objection to the admission of evidence."(citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981); Vanisckel v. White, 166 F.3d at 957-58; Bonin v. Calderon, 59 F.3d at 842-43.

In this case, Respondent has adequately pled the existence of the procedural bar of untimeliness. Although the California Court of Appeal, simultaneously addressed the merits of the claims, it independently determined that Petitioner waived the issues with regard to Claims

1   Three and Four by failing to object at trial.[3]  <u>Harris</u>, 489 U.S. at 264 n. 10; <u>see also</u> <u>Loveland v.</u>

2   <u>Hatcher</u>, 231 F.3d 640, 643-44 (9th Cir. 2000).  Therefore, the burden is on Petitioner to assert

3   specific factual allegations that demonstrate the inadequacy of this bar.  Petitioner has not done

4   so.  Accordingly, claims three and four are procedurally defaulted.  Even if Petitioner had

5   demonstrated the inadequacy of the bar, for the reasons explained below under sections F and G,

6   there is no merit to Petitioner's claims.

7   D.   <u>Use of Prior Juvenile Convictions in Imposing Three Strikes Sentence</u>

8       Petitioner contends that the use of his juvenile adjudications to make his sentence subject

9   to California's Three Strikes law violated his due process, notice, and jury trial rights under the

10  Fifth, Sixth and Fourteenth Amendments.

11      In rejecting Petitioner's claim on direct appeal, the Court of Appeal stated in part:

12       [Petitioner] finds support for his argument in *U.S. v. Tighe* (9th Cir. 2001)
         266 F.3d 1187 (*Tighe*).  The issue in *Tighe* was whether a juvenile conviction
13       could be used to enhance a sentence under the Armed Career Criminal Act
         (ACCA).  After analyzing *Apprendi v. New Jersey* (2000) 530 U.S. 466
14       (*Apprendi*), *Jones v. United States* (1999) 526 U.S. 227, and *Almendarez-Torres
         v. United States* (1998) 523 U.S. 224, *Tighe* concluded "*Apprendi's* narrow 'prior
15       conviction' exception is limited to prior convictions resulting from proceedings
         that afforded the procedural necessities of a jury trial and proof beyond a
16       reasonable doubt.  Thus, the 'prior conviction' exception does not include nonjury
         juvenile adjudications."  (*Tighe*, at pp. 1194-1195.)  The "narrow 'prior
17       conviction' exception" *Tighe* referred to was *Apprendi's* holding that prior
         convictions that increase the penalty for a crime need not be submitted to a jury
18       and proven beyond a reasonable doubt.  (*Apprendi*, at p. 490 ["other than the fact
         of a prior conviction, any fact that increases the penalty for a crime beyond the
19       prescribed statutory maximum must be submitted to a jury, and proved beyond a
         reasonable doubt"].)
20       To say *Tighe* has not been met with universal acceptance would be unduly
         generous.  *U.S. v. Jones* (3d Cir. 2003) 332 F.3d 688, 696, and *U.S. v. Smalley* (8th
21       Cir. 2002) 294 F.3d 1030, 1032-1033, both reached the opposite result when faced
         with the identical issue.  These cases rejected *Tighe's* interpretation of *Apprendi*,
22       *Jones v. United States*, and *Almendarez-Torres v. United States* and concluded
         "the question of whether juvenile adjudications should be exempt from
23       *Apprendi's* general rule should not turn on the narrow parsing of words, but on an
         examination of whether juvenile adjudications, like adult convictions, are so
24       reliable that due process of law is not offended by such an exemption.  The

25  _____

26  [3] Because the California Supreme Court's opinion is silent in nature, this Court "looks through" that
    decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a
27  reasoned opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)
    (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning
28  where former affirms latter without discussion); <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n. 7 (9th Cir.2000).

1
2
3

> protections found sufficient were the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the right against self-incrimination. (*Smalley*, at p. 1033.)
>
> The parties have not cited, and we have not found, any federal appellate cases that agreed with *Tighe*.

4   (Respondent's Exhibit C, at 3-4.)

5        To the extent Petitioner relies on <u>Tighe</u>, the Court finds that the Ninth Circuit's recent

6   opinion in <u>Boyd v. Newland</u>, 393 F.3d 1008 (9th Cir. 2004), persuasive authority on Petitioner's

7   claim.[4]  In <u>Boyd</u>, the petitioner's sentence was increased from three to six years based on a

8   nonjury juvenile adjudication.  There, the Ninth Circuit recognized its prior holding in <u>Tighe</u> that

9   nonjury juvenile adjudications did not fall in the prior convictions exception outlined in the

10  <u>Apprendi</u>. <u>Id</u>. at 1016-1017.  The Court went on to acknowledge that California courts have

11  disagreed with its holding in <u>Tighe</u> stating, "They conclude that Apprendi does not preclude the

12  use of nonjury juvenile adjudications to enhance the sentence of an adult offender."  <u>Id</u>. at 1017

13  (citing among others, <u>People v. Bowden</u>, 102 Cal.App.4th 387 (2002).)  Further, the Court

14  acknowledged, as the Court of Appeal did in this instance, that "the Third and Eighth Circuits

15  have held the *Apprendi* 'prior conviction' exception includes nonjury juvenile adjudications,

16  which can be used to enhance a defendant's sentence."  <u>Id</u>. (citing <u>United States v. Jones</u>, 332

17  F.3d 668, 696 (3d Cir. 2003) and <u>United States v. Smalley</u>, 294 F.3d 1030, 1033 (8th Cir. 2002).)

18  The Ninth Circuit concluded,

19
20
21
22
23
24

> Although we are not suggesting that *Tighe* was incorrectly decided, as these varying interpretations of *Apprendi* suggest, the opinion does not represent clearly established federal law "as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In general, Ninth Circuit precedent remains persuasive authority in determining what is clearly established federal law.  See *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) (stating that Ninth Circuit case law may be used to help determine clearly established federal law).  But, in the face of authority that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

25  <u>Id</u>. at 1017.

26        For the reasons explained in <u>Boyd</u>, this Court too finds that in light of the substantial law

27

28  ───────────

[4] The Court notes that Respondent did not, and could not, have cited <u>Boyd v. Newland</u> as authority as it was issued after the filing of Respondent's answer.

contrary to the holding in <u>Tighe</u> and the lack of authority from the Supreme Court resolving the issue, this Court cannot find that the Court of Appeal's decision that the use of Petitioner's prior juvenile adjudication to increase his sentence under California's Three Strikes law was contrary to, or involved an unreasonable application of, clearly established Supreme Court authority. Petitioner's claim fails on the merits.

E.       <u>Insufficient Evidence to Support Conviction of Attempted Criminal Threats</u>

Petitioner contends that there was insufficient evidence to support his conviction of attempted criminal threats.

The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law.  <u>Id</u>. at 324, n. 16.

In order to prove the offense of criminal threats (§ 422), the prosecution must establish the following five elements:

1.       A person willfully threatened to commit a crime which if committed would result in death or great bodily injury to another person;
2.       The person who made the threat did so with the specific intent that the statement be taken as a threat;
3.       The threat was contained in a statement that was made verbally, in writing, or by means of an electronic communication device;
4.       The threatening statement on its face, and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat; and
5.       The threatening statement caused the person threatened reasonably to be in sustained fear for his own safety.  It is immaterial whether the person who made the threat actually intended to carry it out.

(CALJIC 9.94; CT 112-113; § 422; <u>People v. Toledo</u>, 26 Cal.4th 221, 227-228 (2001).

"An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."  (CALJIC No. 6.00; CT 111; § 21a; <u>People v. Toledo</u>, 26 Cal.4th at 229.)  The law of attempt has further been described by the California Supreme Court:

1
2
3

When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime, and performs an act that goes beyond mere preparation . . . and . . . shows that the perpetrator is putting his or her plan into action, the defendant may be convicted of criminal attempt.

4

Id. at 230 (citations and internal quotation marks omitted.)

5

In rejecting Petitioner's claim on direct review, the Court of Appeal held:

6
7
8
9

There is no direct evidence that [Petitioner] intended his threat to be conveyed to Kenneth. Despite the opportunity to do so, [Petitioner] never told Kenneth he was going to shoot him. [Petitioner] never told Torres, or anyone else for that matter, to tell Kenneth that [Petitioner] threatened to shoot him. On the other hand, there is no evidence that [Petitioner] told Torres not to convey his threat to Kenneth. [Petitioner] testified he never threatened Kenneth.

. . . .

10
11
12
13

[Petitioner] went to the bar where Kenneth worked. He struck up a conversation with Torres, who appeared to be working at the bar. He threatened Kenneth in her presence more than once. After Torres relayed the threat to Kenneth and convinced [Petitioner] to go outside, [Petitioner] reiterated the threat and showed Torres a gun. [Petitioner] also threatened another employee of the bar and repeated his threat for others to hear. [Petitioner] attempted to force his way back into the bar. The jury reasonably could have inferred from this circumstantial evidence that [Petitioner] intended the threat to be communicated to Kenneth.

14

(Respondent's Exhibit C, at 8-9.)

15
16
17
18
19
20
21
22
23
24
25
26

It is significant to note that Petitioner was convicted of *attempted* criminal threats. With that in mind, sufficient evidence exists to support the jury's finding of guilt on attempted criminal threats and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. There was direct testimony by Sheila Torres and Freddie Pate that Petitioner threatened to commit a crime which, if actually committed, would result in the death or great bodily injury of Kenneth Worley. Ms. Torres testified that Petitioner threatened to "kill" Mr. Worley by shooting him. (RT 34-35.) Ms. Torres communicated Petitioner's threat to Mr. Worley, who subsequently called the police. (RT 35, 83-84.) Freddie Pate testified that Petitioner threatened to "take care of" Kenneth Worley. (RT 59.) Petitioner's possession of a loaded handgun with extra ammunition and the fact that he reached for it after making his second threat to Mr. Worley demonstrated his specific intent that the statement be taken as a threat. (RT 38-40, 63, 96, 99, 101, 104.)

27
28

As Respondent submits, although Mr. Worley wavered as to whether he experienced sustained fear due to the threat (RT 84-85, 88-89), this was not required under attempted criminal

11

threats.  See e.g. People v. Toledo, 26 Cal.4th at 231 ("if a defendant . . . acting with the requisite

intent, makes a sufficient threat that is received and understood by the threatened person, but, for

whatever reason, the threat does not actually cause the threatened person to be in sustained fear

for his or her safety even though, under the circumstances, that person reasonably could have

been placed in such fear, the defendant properly may be found to have committed the offense of

attempted criminal threat.")  Given the nature of Petitioner's threat and his ability to carry it out,

it was reasonable for a person in Mr. Worley's position to be put in sustained fear.

The jury's verdict demonstrated that they believed the testimony of Ms. Torres and Mr. Tate

regarding the threats made by Petitioner.  The facts of the case demonstrate that Petitioner

performed acts which went beyond mere preparation.  Petitioner put his plan into action by

communicating his threat and ensuring, through his loaded gun, that he could carry it out.

     Although Petitioner did not convey his threat directly to Mr. Worley, Petitioner

demonstrated his specific intent to have his threat conveyed to him.  Petitioner traveled directly

to the bar that Kenneth Worley manages.  (RT 31, 33.)  Petitioner claimed that the bar was his

own and that he wanted to take it back.  (RT 33-34, 40, 58.)  He then verbally threatened to kill

Mr. Worley once, while in the bar, and a second time while outside of the bar.  (RT 34, 36-40,

59, 62.)  As previously stated, Petitioner made both threats to Sheila Torres and Freddie Pate.

(Id.)  After the first threat, Mr. Torres communicated the threat to Mr. Worley.  (RT 35.)

Petitioner then made a second threat to kill Mr. Worley while outside the bar, while reaching for

the handgun in his waistband.  (RT 36-40, 62.)  Thus, there was sufficient evidence to support

Petitioner's conviction for attempted criminal threats.

     For the stated reasons, the state court correctly rejected Petitioner's claim and the state

courts' adjudication of this claim was neither contrary to nor an unreasonable application of

clearly established Supreme Court authority.

F.     Trial Court Error in Responding to Jury's Question

     Petitioner contends that the trial court erred in responding to the jury's question during

deliberations regarding the difference between a criminal threat and an attempted criminal threat.

     When a trial judge responds to a "jury's question by directing its attention to the precise

1  paragraph of the constitutionally adequate instruction that answers its inquiry," the Constitution

2  does not require anything more. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000).  There is a strong

3  presumption that juries understand and follow the trial court's instructions.  <u>Id.</u>; <u>Richardson v.</u>

4  <u>Marsh</u>, 481 U.S. 200, 211 (1987).

5          After deliberations began, the jury sent a note to the trial court asking for clarification of

6  the difference between a criminal threat and an attempted criminal threat.  (CT 93.)  The trial

7  court, after consulting with the attorneys, again read to the jury the standard jury instructions on

8  criminal threats (CALJIC No. 9.94) and attempt (CALJIC No. 6.00).  The trial court also allowed

9  each attorney to give a short summation regarding the distinction between the two crimes as

10  applied to this case.  (RT 242-246.)  Neither party objected to this procedure.  The jury returned a

11  verdict shortly thereafter.

12          As the Court of Appeal stated, Petitioner contends this procedure was inadequate and the

13  trial court should have instructed the jury that an attempted criminal threat occurs when "the

14  defendant in fact has engaged in all of the conduct that would support a conviction for criminal

15  threat, but where the crime of criminal threat has not been completed only because of some

16  fortuity outside the defendant's control or anticipation (for example, because the threat it

17  intercepted or not understood, or because the victim for some reason does not actually suffer the

18  sustained fear that he or she reasonably could have sustained under the circumstances)."  (<u>People</u>

19  <u>v. Toledo</u>, 26 Cal.4th at p.234.)

20          As Respondent submits, in the present case, the trial court adequately assessed and

21  responded to the jury's question.  By directing the jury's attention to the standard CALJIC

22  instructions regarding criminal threats (CALJIC No. 9.94) and attempt (CALJIC No. 6.00), the

23  trial court realized that the crime of attempted criminal threats is "defined through the interplay

24  of section 422 and the statutory provision relating to attempts."  <u>People v. Toledo</u>, 26 Cal.4th at

    230.

25          As the Court of Appeal properly found, the jury's verdict confirmed that the trial court

26  properly responded to the jury's question.  (Respondent's Exhibit C, at 11.)  The jury understood

27  the distinction between the lesser included offense and the charged offense by returning a verdict

28

1   of guilty on the attempted criminal threats rather than the original charge of criminal threats.

2   (Id.)

3        For the stated reasons, the state court correctly rejected Petitioner's constitutional claim,

4   and, in any event, the state courts' adjudication of this claim adverse to Petitioner was neither

5   contrary to nor an unreasonable application of clearly established Supreme Court precedent.  28

6   U.S.C. § 2254(d)(1).

7   G.    Instructional Error

8        Petitioner contends that the trial court instructed the jury on the elements of murder and

9   assault with a firearm in regards to his criminal threats charge.

10        A challenge to a jury instruction solely as an error under state law does not state a claim

11   cognizable in a federal habeas corpus action.  See, Estelle v. McGuire, 502 U.S. 62, 71-72

12   (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show

13   that the ailing instruction by itself so infected the entire trial that the resulting conviction violates

14   due process.  See, id. at 72.  Additionally, the instruction may not be judged in artificial isolation,

15   but must be considered in the context of the instructions as a whole and the trial record. Id.  The

16   court must evaluate jury instructions in the context of the overall charge to the jury as a

17   component of the entire trial process.  See, United States v. Frady, 456 U.S. 152, 169 (1982)

18   (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).  Furthermore, even if it is determined

19   that the instruction violated the petitioner's right to due process, a petitioner can only obtain

20   relief if the unconstitutional instruction had a substantial influence on the conviction and thereby

21   resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710

22   (1993) (whether the error had a substantial and injurious effect or influence in determining the

23   jury's verdict.). See, Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  When a reviewing

24   court does not provide a reasoned decision, the Court independently reviews the record to

25   determine whether the state court clearly erred in its application of Supreme Court law.  Delgado

26   v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state

27   court does not supply reasoning for its decision, but an independent review of the record is

28   required to determine whether the state court clearly erred in its application of controlling federal

law."); see also, e.g. Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id. As previously stated, there is a strong presumption that juries understand and follow the trial court's instructions. Weeks v. Angelone, 528 U.S. at 234; Richardson v. Marsh, 481 U.S. at 211.

After responding to the jury's question, the trial court noted that the use note to CALJIC No. 9.94 (elements of § 422) stated that the trial court must instruct on the elements of the threatened crime. Accordingly, after conferring with the attorneys, the trial court instructed the jury on the elements of murder (CALJIC Nos 8.10 and 8.11; RT 248-249) and assault with a firearm (CALJIC 9.00 and 9.02; RT 249-250). When doing so, the trial court clearly explained that Petitioner was not charged with these crimes, but these were the crimes he allegedly threatened to commit. (RT 250).

Specifically, the trial court stated:

These instructions are given not because these particular crimes are being charged, but because it was alleged that these were the crimes involved in the criminal threat charged under Penal Code Section 422. And I'm required to give you instructions on the elements of the underlying crime that is allegedly threatened.

(Id.)

In rejecting Petitioner's claim, the Court of Appeal held:

We agree . . . that it is unnecessary, and sometimes unwise, to instruct the jury with the elements of the threatened crimes. This is not a case, however, where it is unwise to provide such instructions. [Petitioner] made specific threats (to kill Kenneth) and identified his preferred method of carrying out his threat (displaying his handgun). Therefore, the trial court easily could identify the threatened crimes, and instruction was easy. The trial court also carefully explained to the jury that [Petitioner] was not charged with the threatened crimes, but it felt an obligation to provide the elements of the threatened crimes to the jury.

On the other hand, informing the jury of the elements of the threatened crime cannot have assisted the jury in its deliberations. At most, we have an abstract instruction, one that is correct in law but irrelevant. [Citation.] While it is error to give an abstract instruction [Citation], in most instances giving an abstract instruction is a technical error that does not require reversal. [Citation.] . . .

Here, it is unfathomable how the jury could have misapplied the instruction. The jury was instructed properly on the crime charged, and the trial court made it clear that [Petitioner] was not charged with either murder or assault with a firearm. Therefore, any error was harmless.

(Respondent's Exhibit C, at 11-12.)

Because the trial court properly instructed the jury that Petitioner was not charged with the crime of murder or assault, but that these were the crimes for which he allegedly threatened to commit and the court was merely obligated to provide those elements to the jury, it follows that, without evidence to the contrary, the jury understood and applied that instruction accordingly. Petitioner has failed to demonstrate how, if at all, he was prejudiced by the addition of these jury instructions. Accordingly, it cannot be said that the trial court's giving of the elements of murder and assault had a substantial and injurious influence on the jury's verdict. Brecht, 507 U.S. at 637. Thus, the state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The petition for writ of habeas corpus be DENIED; and

2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 5, 2005                          /s/ Dennis L. Beck
3b142a                                      UNITED STATES MAGISTRATE JUDGE

16